IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No: 19-CV-00495-DDD-NRN

JOLLEY POTTER RANCHES ENERGY CO., LLC,
On behalf of itself and all others similarly situated,

    Plaintiffs,

v.

TEP ROCKY MOUNTAIN, LLC,

    Defendant.

_____

**CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES
AND MEMORANDUM IN SUPPORT**

**Dated:   July 11, 2025**

1

The undersigned Class Counsel respectfully move the Court for an award of attorney's fees of one-third (1/3) of the net settlement (after subtraction of expenses and addition of accrued interest on the escrowed settlement funds) and for reimbursement of their expenses in the amount of $450,643.13, pursuant to Fed. R. Civ. P. 23(h), Fed. R. Civ. P. 54(d)(2), and D. Colo. R. 54.3.

## FACTUAL BACKGROUND

The relevant facts are contained in the Parties' Joint Motion for Preliminary Approval of Settlement (Doc. 189) and the Parties' Joint Motion for Final Approval of Settlement (Doc. 200) and will not be repeated here. After six years of hard-fought litigation, the efforts of Class Counsel have resulted in the recovery of $41.7 million, plus additional accrued interest, for the benefit of the Plaintiff Class. Class Counsel are requesting reimbursement of expenses of $450,643.13 and an attorney's fee of one-third of the net recovery, including accrued interest on the escrowed funds.

## ARGUMENT AND AUTHORITIES

### I. THE COMMON FUND DOCTRINE GOVERNS ATTORNEY FEES IN THIS CASE

The Common Fund Doctrine has been recognized and approved by the Colorado Supreme Court as the basis for awarding attorney fees, particularly in class action cases.

> The common fund doctrine has enjoyed long term and widespread use. In class action lawsuits where a fund is created for the benefit of the class, either through settlement or judgment on the merits, the common fund doctrine is widely adhered to as a method for proportionately spreading the attorneys fees among the class members. *See* 7B Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure* § 1803 (1986), and cases cited therein; *County Workers Compensation Pool v. Davis*, 817 P.2d 521, 526 (Colo. 1991). In fact, adherence to the common fund doctrine is so prevalent that the justification for awarding interim fees after a fund has been created, in part, "lies in the certainty that counsel will ultimately receive a fee award . . . . The only unanswered question is the size of the award, not its propriety." 3 Herbert Newberg, *Newberg on Class Actions* § 6975 at 1267 (1977).

*Kuhn v. State*, 924 P.2d 1053, 1060 (Colo. 1996).

2

The Common Fund Doctrine is based on fundamental principles of equity. *Id.* at 1059 ("An attorney's right to fees from the common fund derives from equitable principles of fairness that combine aspects of both unjust enrichment and *quantum meruit*."); *Hawes v. Colorado Division of Insurance*, 65 P.3d 1008, 1015 (Colo. 2003) ("The common fund doctrine is an equitable remedy that affords fees to attorneys for their advocacy for the benefit of others."). *See also, e.g.*, 1 ALBA CONTE, ATTORNEY FEE AWARDS §§2.1, 2.5, at 49-50, 66-68 (3d ed. 2004).

Consistent with the equitable foundations of the Common Fund Doctrine, fees are awarded from the common fund on the theory "that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

> As the Colorado Supreme Court explained in *Kuhn*:
>
> The common fund doctrine applies where a suit involving an individual or representative plaintiff results in the creation of a monetary fund for a class of people situated similarly to the plaintiff. The common fund doctrine is considered an exception to the American rule because the individual or representative plaintiff is not required to compensate his or her attorney out of pocket. Instead, the fees are paid out of the monetary fund that the litigation has produced. "Fees in common fund cases are extracted from the predetermined damage recovery rather than obtained from the losing party . . . ."

924 P.2d at 1057 (quoting *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir.), *cert. denied*, 488 U.S. 822 (1988)). Chief Judge Sherman Finesilver of the U. S. District Court for the District of Colorado also explained:

> The practice of compensating Class Counsel in Common Fund cases on a percentage of the recovery basis makes sense. It is consistent with practices in the private marketplace; when an attorneys' fees is [sic] entirely contingent upon the recovery achieved, a percentage fee is customary if not universal.

*Consumers Gas & Oil, Inc. v. Farmland Industries*, 863 F. Supp. 1357, 1361 (D. Colo. 1993).

3

This Court has recently articulated the legal standard to be applied when awarding attorneys fees in common fund cases:

> In common fund cases, the Tenth Circuit has "recognized the propriety of awarding attorneys' fees . . . on a percentage of the fund, rather than lodestar, basis." *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993); *accord Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994) (holding that, although either method is permissible in common fund cases, "*Uselton* implies a preference for the percentage of the fund method"). Because this is a common fund case and because plaintiff's fee request is for a percentage of the common fund, the Court will consider the attorneys' fees award using the percentage of the fund approach. *See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (distinguishing common fund and statutory fees cases).
>
> The "percentage reflected in a common fund award must be reasonable [and] the district court must 'articulate specific reasons for fee awards.'" *Brown*, 838 F.2d at 454 (quoting *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983). In determining the reasonableness of a percentage award, courts must apply the *Johnson* factors[.]

*Paulson v. McKowen*, 19-cv-02639, 2023 U.S. Dist. LEXIS 43717, at *18-19 (D. Colo. Mar. 15, 2023).

## II.   THE REQUESTED FEES AND EXPENSES ARE REASONABLE

### A. Analysis of the Percentage of the Fund Method Shows that the Fee Requested Is Reasonable

Application of the percentage-of-the-fund method is a two-part process, reflecting its "hybrid" nature. *See, e.g.*, *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 459 (10th Cir. 2017) ("Our approach . . . has been called a 'hybrid' approach, combining the percentage fee method with the specific factors traditionally used to calculate the lodestar [i.e., the *Johnson* factors]." (cleaned up)). Under the first part of the test, the court will compare the requested percentage-of-the-fund to prior cases to determine if the requested award would normally be considered reasonable.

The Tenth Circuit has "not adopted a benchmark percentage for attorneys' fees from common fund settlements." *Voulgaris v. Array Biopharma, Inc.*, 60 F.4th 1259, 1263 (10th Cir.

4

2023). Instead, Tenth Circuit cases have held that range of possible percentages, "from 22% to 37.3%," can constitute reasonable fees. *Id.* "A fee of one-third of the common fund is typical in complex cases." *Paulson*, 2023 U.S. Dist. LEXIS 43717, at *20; *see also Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, Civil Action No. 09-cv-01543-REB-KMT, 2010 U.S. Dist. LEXIS 144366, at *13 (D. Colo. Dec. 22, 2010) (summarizing D. Colo. cases); *accord Stanley v. Orthopedics*, Civil Action No. 1:22-cv-01176-RM-SBP, 2024 U.S. Dist. LEXIS 73951, at *24 (D. Colo. Apr. 23, 2024) ("[T]he Proposed Settlement Agreement specifically provides Plaintiffs' counsel an award of attorney's fees in the total amount of $99,666.67—one-third of the settlement fund—'plus reasonable out-of-pocket costs and expenses not to exceed $10,000.'. These amounts are typical of those commonly found reasonable in class settlements." (citation omitted)); *Thompson v. Qwest Corp.*, No. 17-cv-1745-WJM-KMT, 2018 U.S. Dist. LEXIS 79941, 2018 WL 2183988, at *3 (D. Colo. May 11, 2018) ("In situations such as this, where the Proposed Settlement creates a common fund, attorneys' fees of one-third or thereabouts are generally deemed reasonable.").

Here, the total estimated damages for all Class Claims, excluding pre-judgment interest, amounts to $48,366,361. The total estimated damages for all Class Claims, including pre-judgment interest (at 8% compounded annually), amounts to $78,718,210. The settlement amount or result obtained is $41,700,000.00 (not including accrued interest on that sum since it was deposited into escrow). Thus, the actual settlement amount here is 86% of the total estimated damages (without pre-judgment interest), and 53% of total estimated damages plus pre-judgment interest. This far exceeds the 7.6% that the Court has acknowledged, and the Tenth Circuit has affirmed, is the median settlement amount for common fund class actions. *See Voulgaris v. Array Biopharma*, Civil Action No. 17-cv-02789-KLM, 2021 U.S. Dist. LEXIS 249646, at *21 (D. Colo. Dec. 3, 2021),

5

*affirmed* 60 F.4th 1259 (10th Cir. 2023). Class Counsel has obtained an excellent result for the Class Members, further supporting the requested fee award. *See Shaw v. Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 U.S. Dist. LEXIS 52783, at *20 (D. Colo. Apr. 21, 2015) (a settlement of 40% of the amount potentially recoverable "is an excellent result" supporting the proposed fee award).

### B. Analysis of the *Johnson* Factors Also Shows That a Fee of One-Third Is Reasonable

Once courts arrive at the presumptively reasonable figure, they will consider the widely recognized 12 *Johnson* factors. *See, e.g.*, *Brown,* 838 F.2d at 454 (adopting the 12-factor test from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). These are:

> (1) the time and labor required; (2) the novelty and difficulty of the question presented in the case; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment because of acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations the client or circumstances imposed; (8) the amount involved and the results obtained; (9) the attorneys' experience, reputation, and ability; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Gottlieb*, 43 F.3d at 483 n.4.

*Johnston v. Camino Natural Res., LLC*, Civil Action No. 19-cv-02742-CMA-SKC, 2021 U.S. Dist. LEXIS 115890, at *2-3 (D. Colo. June 22, 2021); *see also Johnson*, 488 F.2d at 717-19.

The Tenth Circuit has cautioned, however, that "rarely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation." *Brown*, 838 F.2d at 456. For example,

> In a common fund case . . . although time and labor required are appropriate considerations, the ninth *Johnson* factor—the amount involved and the results obtained—may be given greater weight when, as in this case, the trial judge determines that the recovery was highly contingent and that the efforts of counsel were instrumental in realizing recovery on behalf of the class.

*Id.*

6

The Tenth Circuit does not require district courts to explicitly name each factor when considering the *Johnson* factors. Rather, the record merely must show that the district court "considered many of the *Johnson* factors—or at least their substance—along the way to the ultimate inquiry of its attorneys' fee analysis: whether the fee is reasonable." *In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1194 (10th Cir. 2023).

However, in the District of Colorado "courts have recognized that in evaluating the various *Johnson* factors, the greatest weight should be given to the monetary results achieved for the benefits of the class." *Anderson v. Merit Energy Co.*, No. 07-cv-00916-LTB-BNB, 2009 U.S. Dist. LEXIS 100681, at *11 (D. Colo. Oct. 20, 2009). The Tenth Circuit gives a high degree of weight to this factor as well, comparing the recovery in the present case to "the median class action settlement for similar cases in the Tenth Circuit." *Voulgaris*, 60 F.4th at 1264 (cleaned up). Specifically, the Court is to compare the total damages suffered by the entire class to the settlement amount, thereby determining the percentage of total recoverable damages the Class Counsel obtained for their client. *See id.*; *compare Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, Civil Action No. 09-cv-01543-REB-KMT, 2010 U.S. Dist. LEXIS 144366, at *8 (D. Colo. Dec. 22, 2010) (noting "80%" of the total recoverable damages "is an excellent recovery by any standard") *with Voulgaris v. Array Biopharma*, Civil Action No. 17-cv-02789-KLM, 2021 U.S. Dist. LEXIS 249646, at *21 (D. Colo. Dec. 3, 2021) (noting "the median settlement as a percentage of overall damages was 7.6% for similar cases").

Local Rule 54.3 also requires that this Motion contain "(1) a summary of relevant qualifications and experience; and (2) a detailed description of the services rendered, the amount

7

of time spent, the hourly rate charged, and the total amount claimed." Accordingly, this Motion will next address these matters and the corresponding *Johnson* Factors.[1]

1. **A Summary of Counsel's Relevant Qualifications, Experience, Reputation, and Ability (Factor 9)**

As is more fully explained in the attached Declaration of David G. Seely, ([Exhibit 1]) he and his law firm, Fleeson, Gooing, Coulson & Kitch, L.L.C., have many decades of experience representing royalty owners in class action litigation such as this, and have previously worked with Nathan A. Keever and G. R. Miller on other royalty class actions in Colorado. As is also explained in the Declarations of Mr. Keever ([Exhibit 2]) and Mr. Miller ([Exhibit 3]), each of them, along with Mr. Keever's firm (Dufford, Waldeck, Milburn & Krohn, LLP), have vast experience representing Colorado royalty owners, and their efforts have significantly shaped the development of Colorado law regarding oil and gas royalties.

2. **A Detailed Description of the Services Rendered, the Amount of Time Spent, the Hourly Rate Charged, and the Total Amount Claimed (Factor 1)**

Class Counsel are requesting an award of attorney fees of one-third (1/3) of the common fund of $41.7 million plus additional accrued interest, after reimbursement of reasonable expenses in the amount of $450,643.13. This information has been clearly communicated to all class members in the mailed and publication notices. Following the preliminary approval hearing, the anticipated gross distribution amount for each class member before addition of accrued interest and subtraction of attorney fees and reimbursed expenses (listed by owner number rather than name) has been posted on Mr. Keever's firm's website www.dwmk.com/tep-class-action. Subsequently, the anticipated net distribution amounts (after attorney fees and expenses and

---

[1] Counsel do not believe Factor 7 is particularly relevant and have not included a discussion of that factor in this Motion.

8

accrued interest) will be posted. If the requested expenses are allowed, the requested one-third fee will amount to approximately $14,067,000.

It is obvious that this six-year litigation did not involve a "file suit and then quickly settle" scenario. From the very outset, Defendant TEP fought at every stage, seeking dismissal, asserting counterclaims, opposing discovery, opposing class certification (which culminated in a three-day evidentiary hearing), appealing from the Court's order granting class certification, and opposing discovery after class certification. Class Counsel invested years of hard work and logged 10,553.75 hours of recorded time, in addition to incurring $450,643.13 of documented cash expenses. Exhibits A and B to Mr. Seely's Declaration, Exhibit A to Mr. Keever's Declaration, and Exhibit A to Mr. Miller's Declaration itemize the time expended by Class Counsel in this highly contested, protracted, and complex lawsuit.

### 3. The Novelty and Difficulty and Requisite Skill (Factors 2 and 3)

This case involved difficult and novel issues, including matters of arguably first impression in the state of Colorado. As explained by the court in *Johnson*:

> Cases of first impression generally require more time and effort on the attorney's part. Although this greater expenditure of time in research and preparation is an investment by counsel in obtaining knowledge which can be used in similar later cases, he should not be penalized for undertaking a case which may "make new law." Instead, he should be appropriately compensated for accepting the challenge.

*Johnson*, 488 F.2d at 717-19.

There is a lack of reported Colorado decisions which have awarded damages to oil and gas royalty owners based on an underpricing claim or on a claim that the amount of gathering, processing or transportation was unreasonable – Defendant TEP argued there are no such cases. Therefore, each of the Class Claims asserted in this case arguably raised an issue of "first" impression in Colorado:

9

1) Residue Gas Pricing (allocated approximately 36% of the recovery): The Class asserted that TEP did not obtain the "best reasonably available price" for residue gas TEP marketed to BP pursuant to the terms of the Williams/BP GPA. This claim is based primarily on the law of other oil and gas jurisdictions which hold that the implied covenant to market requires the lessee to obtain the "best reasonably available price." *See, e.g.*, John Burritt McArthur, OIL AND GAS COVENANTS FOR THE TWENTY-FIRST CENTURY, NEXT STEPS IN EVOLUTION, 222 (2014).

2) Unreasonable Transportation Costs (WPX Period) (allocated 42% of the recovery): The Class asserted that during the WPX period, WPX (now TEP) deduction of transportation cost was unreasonable because WPX by-passed the better reasonably available price available at the White River Hub and incurred unnecessary and unreasonable downstream transportation costs to market residue gas downstream for a lower net price.

3) Unreasonable Transportation Costs (TEP Period) (allocated 5% of the recovery): The Class asserted that during the TEP Period, TEP's deduction of NWPL transportation costs was unreasonable because: i) TEP deducted transportation costs TEP did not incur, ii) TEP could market its residue gas at White River Hub without incurring NWPL transportation costs on better terms, and iii) TEP deducted NWPL transportation costs from royalty owners whose leases expressly precluded deduction of transportation costs.

4) Unreasonable Gathering and Processing Costs (allocated 16% of the recovery): The primary class claim related to both gathering and processing costs is that TEP's deductions of gathering and processing costs had recovered more than the proportionate

10

      royalty owner share of the capital and operating costs incurred to construct and operate the applicable gathering and processing facilities, and that deduction of more than the actual, direct cost incurred to gather and process produced gas is unreasonable

5) Other Issues: In addition, TEP asserted defenses based on the applicable statutes of limitation, terms of prior settlement agreements, variations in lease language, and other grounds, and the Class asserted claims for prejudgment interest based on the amount TEP gained on wrongfully-detained funds.

Given the novelty and difficulty of the issues involved, a high level of skill, experience, determination, and creativity was required. *In re Qwest Communs. Int'l, Inc.*, 625 F. Supp. 2d 1143, 1150 (D. Colo. 2009) ("If the issues in a case are complex and difficult then obviously it will take great skill to address those issues successfully."). *Johnson* factors 2 and 3 weigh in favor of the requested fee award.

### 4. The Preclusion of Other Employment By the Attorneys Due to Acceptance of this Case (Factor 4)

The acceptance of this case did not preclude Class Counsel from representing other clients in cases that pre-dated the filing of this lawsuit. However, after this lawsuit was filed, because of the significant amount of time this case required, Class Counsel declined representation in some matters that would have generated hourly fees. (Seely Declaration, ¶ 9b; Keever Declaration, ¶ 8b). As such, this factor further supports the reasonableness of the award.

### 5. The Customary Fee (Factor 5)

As is explained in the attached Declarations of Class Counsel, unless the case settles very quickly, in which case a lower fee may be appropriate, the customary fee in class action royalty cases is one-third or more. *See also Johnston v. Camino Natural Res., LLC*, Civil Action No. 19-cv-02742-CMA-SKC, 2021 U.S. Dist. LEXIS 115890, at *3-4 (D. Colo. June 22, 2021) (citing

11

cases and noting that 40% of the gross settlement value falls "within the normal range for a contingent fee award" and is reasonable as a matter of law).

This case has been in litigation for six years, and Class Counsel have spent thousands of hours working on this case to get to this point. The requested fee of one-third falls within what is customary, and there is no reason here to award less than the customary fee.

6. **Whether the Fee is Fixed or Contingent (Factor 6)**

Perhaps most importantly, the fees of Class Counsel were entirely contingent upon achieving a successful recovery on behalf of the Plaintiff Class.

> Courts have recognized the importance of such arrangements, noting that many workers "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation." *Wells v. Sullivan*, 907 F.2d 367, 371 (2nd Cir. 1990). Thus, "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case." *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 245-46 (4th Cir. 2010). "Access to the courts would be difficult to achieve without compensating attorneys for that risk." *Id.*

*Shaw v. Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 U.S. Dist. LEXIS 52783, at *19 (D. Colo. Apr. 21, 2015). The same rationale applies in a case such as this, where a single royalty owner's potential recovery would not economically justify hiring an attorney on an hourly basis. "A contingent fee, and the potential for a relatively high fee, is designed to reward counsel for taking the risk of prosecuting a case without payment during the litigation, and the risk that the litigation may be unsuccessful." *In re Qwest*, 625 F. Supp. 2d at 1151.

Counsel not only shared the risk of loss with the representative plaintiff and the Class, but also completely assumed the risk that they would receive no fee—and no reimbursement of expenses—in the absence of a successful outcome. This factor weighs heavily in favor of the requested fee. *See Vaszlavik v. Storage Tech. Corp.*, No. 95-B-2525, 2000 U.S. Dist. LEXIS

21140, at *10 (D. Colo. Mar. 9, 2000); *Aragon v. Clear Water Prods. LLC*, No. 15-cv-02821-PAB-STV, 2018 U.S. Dist. LEXIS 212825, at *16 (D. Colo. Dec. 18, 2018).

### 7. The Nature and Length of the Professional Relationship with the Client (Factor 11)

Although this factor is not usually of great significance in a class action, where class members have virtually no relationship with Class Counsel, it should be noted that Mr. Keever and his firm have represented named plaintiff Jolley Potter Ranches Energy Co., LLC for over a decade. (Keever Declaration, 8h). Mr. Keever has represented other Class Members since 1998.

### 8. The Amount Involved and the Results Obtained (Factor 8)

As noted above, the amount involved and the results obtained are entitled to greater weight, especially where, as here, the fee is entirely contingent on recovery. *Brown*, 838 F.2d at 456. As explained above, the settlement amount here is 86% of the total estimated damages (without pre-judgment interest), and 53% of total estimated damages plus pre-judgment interest. As previously noted, this far exceeds the norm and represents "an excellent result." *Shaw*, 2015 U.S. Dist. LEXIS 52783, at *20.

### 9. The Undesirability of the Case (Factor 10)

Although there is nothing inherently undesirable about representing the good, honest, hard-working individuals who typically receive royalty payments from oil and gas companies, experience has shown that royalty litigation, especially class actions, often lasts many, many years and that oil and gas companies tend to hold onto the royalty owners' money as long as possible. That is a significant deterrent for lawyers to take on such a case on a contingent fee basis, because the case is almost certain to consume vast amounts of time and resources of the lawyers and their firms and strain firm finances and relationships within the firms, all in the hope of the receipt of a fee at some distant future date. The risk incurred by Class Counsel similarly factors into the

13

undesirability of the case, which "carries significant weight and weighs in favor of a substantial fee award." *In re Qwest*, 625 F. Supp. 2d at 1153.

### 10. Awards in Similar Cases (Factor 12)

As is explained in the attached Declarations of Class Counsel, courts in previous class action royalty cases in which these lawyers have been involved and where class certification was contested have uniformly approved requested percentage fees of one-third of the net recovery, after subtraction and reimbursement of counsel's reasonable expenses.

### C. A "Cross-Check" Using a Lodestar Calculation Also Shows that the Requested Fee Is Reasonable

Although not required by the Tenth Circuit, courts may "cross-check" the reasonableness of attorney fees determined under the percentage-of-the-fund method against a "lodestar" calculation more commonly used in cases involving attorney fees under fee-shifting statutes. *See Voulgaris*, 60 F.4th at 1265–66. Under the lodestar method, "courts multiply the reasonable number of hours expended on the litigation by a reasonable hourly rate to determine the amount of a reasonable fee." *Kerner v. City & Cty. of Denver*, 733 Fed. App'x. 934, 936 (10th Cir. 2018). The Tenth Circuit has described the two elements of the lodestar analysis as follows:

> To determine what constitutes a reasonable hourly rate for each person who worked on the case, the district court considers the prevailing market rate for similar services by lawyers of reasonably comparable skill, experience, and reputation in the relevant community including experience in. . . analogous litigation.
>
> To evaluate the number of hours reasonably expended on the litigation, the district court considers whether the attorney's hours were necessary under the circumstances. Counsel for the prevailing party must exercise billing judgment and should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary.

*Valdez v. Macdonald*, 66 F.4th 796, 836 (10th Cir. 2023) (cleaned up). Because the relevant standard for hourly rates is what is "reasonable" in the relevant market, the requesting attorneys' own normal hourly rates are not necessarily relevant. *See Snyder v. Saul*, No. 16-cv-01227-RM,

14

2020 U.S. Dist. LEXIS 71643, at *3 (D. Colo. April 23, 2020) (despite plaintiff's counsel not providing her normal hourly rate, requested fees were reasonable upon review of all relevant factors).

The "relevant community" for determining what constitutes a "reasonable rate" is not the lawyers' homebase—rather, it is "the area in which the litigation occurs." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983), *overruled on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987); *accord Eighth Dist. Elec. Pension Fund v. Force Elec., LLC*, No. 23-cv-01070-GPG-KAS, 2024 U.S. Dist. LEXIS 196730, at *3 (D. Colo. Sep. 19, 2024).

Because this litigation is situated in the District of Colorado, the relevant market area is Denver and its vicinity. Accordingly, Denver rates should be used for any lodestar calculation.

Tenth Circuit panels and district courts have routinely approved of the attorney fee award when the percentage-of-the-fund represents "two to three times the lodestar or more to compensate for risk and to reflect the quality of the work performed." *Lanham v. Katz*, No. 23-cv-00507-NYW-NRN, 2024 U.S. Dist. LEXIS 73027, at *14-15 (D. Colo. Apr. 22, 2024) (summarizing caselaw); *see also In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 01-1451-REB-CBS, 2006 U.S. Dist. LEXIS 71267, at *21 (D. Colo. Sept. 29, 2006) ("[L]ead counsel who create a common fund for the benefit of a class are rewarded with fees that often are at least two times the reasonable lodestar figure, and in some cases reach as high as five to ten times the lodestar figure.").

Attached hereto as Exhibit 4 is the Affidavit of Grant Stiefel, an expert on attorney fees. Mr. Stiefel's affidavit contains his opinions regarding the reasonableness of the requested fees and expenses, and includes his own lodestar analysis, which results in a base lodestar of $7,266,270 and a multiplier of 1.89, both of which he finds to be reasonable and conservative, and to confirm the reasonableness of the requested fee. (Exhibit 4, ¶¶ 40-85).

**D.     The Expenses for which Reimbursement is Requested are Reasonable.**

Class Counsel's out-of-pocket expenses are compiled and described in Exhibit B attached to Mr. Seely's Declaration. These expenses were actually paid and were necessarily incurred in the course of prosecuting this action on behalf of the Plaintiff Class, and they reflect the actual expenses incurred by Class Counsel in this case. They were reasonably incurred and are reasonable in amount, and should therefore be reimbursed from the common fund. (Seely Declaration, ¶ 11; Stiefel Declaration, ¶¶ 86-89).

## CONCLUSION

For the reasons stated above, Class Counsel request that the Court award them reasonable attorneys' fees in the total amount of one-third (1/3) of the net settlement proceeds (after subtracting expenses and adding interest accrued on the escrowed funds) and reimbursement of their reasonable expenses in the total amount of $450,643.13.

Respectfully submitted,

*/s/ Nathan A. Keever*
Nathan A. Keever, #24630
Dufford Waldeck Milburn & Krohn
744 Horizon Drive, Suite 300
Grand Junction, CO  81506
(970) 241-5500
keever@dwmk.com


*/s/ G.R. Miller*
G.R. Miller, #8406
G.R. Miller, P.C.
1040 Main Avenue
Durango, CO 81302
 (970) 247-1113

and

*/s/David G. Seely*
David G. Seely, KS State Reg. #11397

16

>Ryan K. Meyer, KS State Reg. #24340
>Fleeson, Gooing, Coulson & Kitch, L.L.C.
>301 N. Main, Suite 1900
>Wichita, Kansas 67202
>dseely@fleeson.com
>(316) 267-7361
>*Attorneys for Plaintiff and Putative Plaintiff Class*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of July 2025, I filed the foregoing electronically with the Clerk of the Court using the CM/ECF system, which caused counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

>*/s/ David G. Seely*
>David G. Seely

17